KING, P. J.,
for the Court:
¶ 1. On March 23, 1995, Roger Bowen suffered an injury to his left arm, hand, fingers, wrist, elbow and shoulder while in the course and scope of his employment with the Holly Springs Police Department. On September 22, 1995, Mr. Bowen filed a petition to controvert with the Workers’ Compensation Commission alleging a permanent partial disability. The City of Holly Springs admitted compensability of the injury for the period March 24, 1995 through December 25, 1995, and paid temporary total disability benefits for that period.
¶ 2. On December 19, 1996, a hearing was held before an administrative law judge. The administrative law judge determined that (1) Mr. Bowen’s period of temporary total disability extended from March 23,1995 through November 3, 1995, (2) Mr. Bowen had not suffered a compen-sable neck injury, and (3) the employer and carrier were not liable for payment of the medical services of Dr. Kenneth Gaines who had examined Mr. Bowen for neck problems.
¶ 3. Mr. Bowen appealed the determination of the administrative law judge to the Workers’ Compensation Full Commission and the Marshall County Circuit Court. Both tribunals affirmed. Mr. Bowen has now appealed to this Court and assigned two points of error:
I. WHETHER THE CIRCUIT COURT COMMITTED MANIFEST ERROR IN AFFIRMING THE DETERMINATION OF THE ADMINISTRATIVE JUDGE AND THE FULL COMMISSION THAT ROGER BOWEN SUFFERED NO OCCUPATIONAL DISABILITY AS A RESULT OF HIS WORK RELATED INJURY SUFFERED WHILE IN THE COURSE AND SCOPE OF HIS EMPLOYMENT WITH THE CITY OF HOLLY SPRINGS, BASED SIMPLY ON THE DETERMINATION THAT HE WAS RELEASED TO RETURN TO WORK WITH NO PHYSICAL RESTRICTIONS AND WAS TERMINATED FROM HIS EMPLOYMENT WITHOUT CAUSE.
II. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE DETERMINATION OF THE ADMINISTRATIVE JUDGE AND THE FULL COMMISSION THAT THE CITY OF HOLLY SPRINGS IS NOT LIABLE FOR PAYMENT OF THE MEDICAL SERVICES OF DR. KENNETH GAINES.
¶ 4. Finding no error, this Court affirms the circuit court judgment.

FACTS

¶ 5. Mr. Bowen was employed as a police officer by the City of Holly Springs. On March 23, 1995, he pursued a criminal escapee into an abandoned house. During this pursuit, Mr. Bowen attempted to force a door open with a tree branch. While doing so, he injured his left leg, arm, hand, fingers, wrist, elbow and shoulder.
¶ 6. Mr. Bowen was granted leave from March 25, 1995 until April 23, 1995. Upon returning to work on April 24, 1995, he did not resume his duties as a patrolman. Mr. Bowen performed as a police dispatcher, 911 operator, and inmate monitor until July 5, 1995. Due to continued pain, he did not return to work after July 5, 1995. Mr. Bowen was terminated on August 15, 1995.
¶ 7. Prior to Mr. Bowen’s present injury, he sustained several other work related injuries. In 1974, he suffered a back injury while unloading a truck and had surgery for a ruptured disc in his lower back. *1105 In 1978 or 1979, Mr. Bowen sustained another lower back injury and had a spinal fusion performed. Approximately ten years later, while working for the Ripley Police Department, he suffered an injury to his left wrist. Carpal tunnel surgery was thereafter performed on his left hand. Shortly after the carpal tunnel surgery, an ulnar nerve transposition was performed in his left arm.
¶ 8. In 1991, he re-injured his back while working as a track driver for Merchants Track Lines. He underwent back surgery which was performed by Dr. Claudio Feler, a neurosurgeon.
¶ 9. After the injury on March 23, 1995, Mr. Bowen was first examined in the emergency room at the Marshall County Hospital. On March 29, 1995, he then consulted Dr. Horton Taylor where he complained of pain in his hand and forearm. Dr. Taylor referred him to Dr. Wayne Lamar, an orthopaedic surgeon.
¶ 10. On April 3, 1995, Mr. Bowen was examined by Dr. Lamar. At this examination, Mr. Bowen complained of pain in his left ring finger, elbow, forearm, and wrist. He was admitted to the hospital where Dr. Lamar performed flexor tendon sheath release and limited synovectomy surgery. Dr. Lamar later determined that Mr. Bowen had suffered a five percent permanent disability to his ring finger. Because Mr. Bowen continued to complain of pain in his forearm and hand, Dr. Lamar referred him to Dr. Kenneth Gaines, a neurologist, for testing. Rather than see Dr. Gaines, Mr. Bowen chose to seek the treatment of another neurologist, Dr. Andrew Kerby.
¶ 11. On May 17, 1995, Mr. Bowen was examined by Dr. Kerby. It was Dr. Ker-by’s opinion that Mr. Bowen had suffered “some median nerve injury in the palm of his hand with this already being aggravated by a history of carpal tunnel syndrome but this does not necessarily explain the numbness in all the fingers and hand and it is rather difficult to explain this by history and exam which was really largely unremarkable.... I believe Dr. Lamar was suggesting Mr. Bowen may have pro-nator [teres] syndrome but I doubt this as it should only involve the median nerve and the sensory loss pattern does not fit this alone.”
¶ 12. Dr. Kerby ordered a nerve conduction test which was performed on May 25, 1995. The test revealed the existence of bilateral carpal tunnel syndrome, “with the right [ulnar nerve] slightly worse than the left or approximately the same, as well as obvious ulnar nerve abnormalities, especially on the left. There did not appear to be evidence for a pronator teres syndrome involving the left median nerve.”
¶ 13. During June of 1995, Mr. Bowen revisited Dr. Taylor where he reported continued pain in his left hand. Dr. Taylor referred him to Dr. Feler.
¶ 14. Dr. Feler examined Mr. Bowen on four occasions. He had complaints of pain in the left shoulder, arm, and hand. Dr. Feler reviewed the results of Dr. Kerby’s nerve conduction study. It was his opinion that Mr. Bowen suffered from possible cervical radiculopathy or peripheral nerve entrapment syndrome. He ordered a magnetic resonance imaging (MRI) test to make a proper diagnosis. The MRI which was performed on June 25, 1995, was unremarkable.
¶ 15. To determine if Mr. Bowen suffered from possible pronator syndrome, Dr. Feler referred him to Dr. Mike Muhl-bauer, a neurosurgeon. Dr. Muhlbauer indicated in his office notes that Mr. Bowen experienced pain mainly in his forearm, particularly when using it. “He also has a lot of tenderness along his extensor carpi radialis longus and brevis. He notes that the pain will occasionally radiate up into his arm. He notes no frank neck pain.”
¶ 16. Dr. Muhlbauer determined that Mr. Bowen did not have pronator teres syndrome. He primarily suffered from severe synovitis or tennis elbow. Dr. Muhl-bauer prescribed anti-inflammatories and referred him back to Dr. Feler.
*1106 ¶ 17. On August 3, 1995, after having examined Mr. Bowen, Dr. Feler released him from his care. He indicated in his medical notes, “The patient has already-seen Dr. Schnapp for his low back and has requested to be allowed to be referred to him for evaluation of his tendonitic process. I have nothing to offer the patient and he is not improved with therapy given by Dr. Muhlbauer, and I think this is reasonable.”
¶ 18. While visiting the previous physicians, Mr. Bowen sought the treatment of Dr. Schnapp. He initially complained of recurrent back and right leg pain and having trouble sleeping. Dr. Schnapp suggested a physical therapy program. He also performed a facet-epidural block.
¶ 19. Dr. Schnapp also treated Mr. Bowen for pain in his left arm and elbow, both wrists and his back. Subsequently to suggesting an intensive rehabilitation program, Dr. Schnapp determined that he could not pinpoint the source of Mr. Bowen’s pain. On November 3, 1995, he indicated an inability to assign any permanent impairment to Mr. Bowen’s left arm. However, it was his opinion that Mr. Bowen should not return to duty as a patrol officer.
¶ 20. In a letter dated December 15, 1995 to Mr. Bowen’s attorney, Dr. Schnapp stated the following:
We have followed Mr. Bowen for the past several months. [His] primary complaint is back pain related to multiple injuries and surgeries and left upper extremity pain with a neuropathic component.
I have advised Mr. Bowen that I could not assign any permanent limitations or impairment to the left upper extremity based on anatomical findings. He does, however, have significant limitations following his back injury and surgeries and he may have reached a point where he will not be able to go back to his job as a police officer. I believe he will be limited to clerical work in the future and I advised him of that.
¶ 21. On January 15, 1996, Mr. Bowen chose to be examined by Dr. Gaines. Mr. Bowen reported that he experienced pain in his hands, fingers, arms, shoulders, and neck due to the injury in March of 1995. Dr. Gaines found that Mr. Bowen had ulnar nerve neuropathy in his arm on the left side which caused pain to radiate up his arm and shoulder.
¶ 22. Dr. Gaines ordered an MRI test to determine the cause of Mr. Bowen’s neck pain. The MRI revealed that Mr. Bowen had a bulging disc at C5-6. It was his opinion that this bulge was the source of Mr. Bowen’s present complaints of pain in his neck. However, he did not feel that this was a significant contributor to his hand pain. He indicated that if the MRI taken in June of 1995 was normal, something happened following that MRI which produced the abnormality seen on the second MRI.
¶ 23. On May 9, 1996, Dr. Gaines approved Mr. Bowen’s return to work as a patrolman with no restrictions. He gave him a permanent medical disability rating of five percent to his neck and ten percent to his left arm.
¶ 24. After considering the evidence, the administrative law judge determined that Mr. Bowen’s period of temporary total disability lasted from March 23, 1995 through November 3, 1995. The administrative law judge also determined that a compen-sable neck injury was not established by the evidence and the employer and carrier were not liable for payment of the medical services of Dr. Gaines. Mr. Bowen appealed to the Workers’ Compensation Full Commission and the circuit court. The Commission and circuit court both affirmed. Mr. Bowen has now appealed to this Court.

STANDARD OF REVIEW

¶ 25. The Workers’ Compensation Commission is the trier of fact and any question of fact decided by it is conclusive *1107 on appeal if it is supported by substantial evidence. Parker v. United Gas Corp., 240 Miss. 351, 357, 127 So.2d 438, 440 (1961).

DISCUSSION

The Commission’s Decision regarding the Extent of Disability

¶ 26. The Commission determined that Mr. Bowen did not sustain any occupational disability. Mr. Bowen contends that when determining the extent of occupational disability, the Commission primarily considered the medical impairment rating given by Dr. Gaines, without considering his loss of wage earning capacity.

Law

1127. “Disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.” Miss.Code Ann. § 71-3-3(i) (Rev.1995).
¶ 28. “The burden of proof rests upon the claimant to establish by competent evidence all the elements of his claim together with the extent and degree of his claimed disability.” Harris v. Chicago Mill & Lumber Co., 441 So.2d 557, 558 (Miss.1983).

Analysis

¶ 29. The relevant question before this Court is not whether there was sufficient evidence to support Mr. Bowen’s claim, but whether substantial evidence existed to support the decision of the Commission. In the resolution of that question, this Court cannot substitute its determination of fact for that of the Commission. The Commission is the trier of fact. This Court exceeds its jurisdiction when it invades the province of the Commission and decides which witnesses the Commission should or should not believe. Hamilton Mfg. Co. v. Kern, 242 So.2d 441, 444 (Miss.1970).
¶ 30. To make a determination of occupational disability, the Commission is charged with considering medical evidence from treating physicians as well as the testimony from the claimant regarding his medical condition. The opinion of the administrative law judge clearly reveals consideration of these factors, and the Commission adopted those findings.
¶ 31. The administrative law judge noted Mr. Bowen’s continued complaint of pain approximately a year after his injury and his unsuccessful attempt to secure other employment. Notwithstanding these facts, it was the Commission’s determination that Mr. Bowen could return to work with few limitations. Though Dr.' Gaines assigned permanent physical disability to Mr. Bowen’s arm, Dr. Sehnapp did not. The Commission based its findings on the testimony of several physicians including Drs. Gaines and Sehnapp. This Court cannot decide which witnesses the Commission should or should not have believed. Considering that Mr. Bowen’s continued pain appeared to have resulted from previous back injuries and a bulging disc in his neck, substantial evidence existed from which the Commission could find that permanent disability benefits were not justified.

The Commission’s Decision regarding Payment of Dr. Gaines’s Medical Services

¶ 32. Mr. Bowen contends that because the Commission relied primarily upon Dr. Gaines’s medical testimony to make its determination, these medical expenses should be covered.

Law

¶ 33. “The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require.” Miss.Code Ann. § 71-3-15(1) (Rev.1995).

*1108
Analysis

¶ 34. The record reveals that approximately ten months after Mr. Bowen’s injury Dr. Gaines examined Mr. Bowen for neck pain. Prior to Dr. Gaines’s examination, Mr. Bowen had not complained principally of neck pain which resulted from his work injury. Based on these facts as well as a comparison of the results of the MRI tests, the Commission found that Mr. Bowen did not sustain a compensable neck injury. Because the neck pain did not appear to occur as a result of Mr. Bowen’s present injury, the Commission properly determined that the employer and carrier were therefore not obligated to pay for medical bills incurred from Dr. Gaines.
¶ 35. This Court notes that' Mr. Bowen had been examined by several specialists. Though not obligated by law to do so, the employer paid for the medical bills associated with these physicians. Miss. Code Ann. § 71-3-15(1). Shortly after his injury, Mr. Bowen had been referred by Dr. Lamar to Dr. Gaines. However, he declined to see Dr. Gaines and sought the seiwices of another specialist. This Court finds that substantial evidence supported the Commission’s decision to deny payment of Dr. Gaines’s medical bills.
¶ 36. Finding no error in the instant case, this Court affirms the circuit court judgment.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY IS AFFIRMED WITH COSTS OF THIS APPEAL ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE,“AND THOMAS, JJ., CONCUR.